# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JOHN CRUZ ALICEA,

      **Plaintiff,**

v.                                        Case No: 6:16-cv-1327-Orl-31DCI

BRIAN MALLARD, JEFFREY BROUGH
and HOUSE OF BLUES ORLANDO
RESTAURANT CORP.,

      **Defendants.**

## ORDER

This Matter comes before the Court on the Motion for Summary Judgment (Doc. 28) filed by the House of Blues, the Response (Doc. 30) filed by the Plaintiff, and the Reply (Doc. 31) filed by the House of Blues.

### I. Factual Background and Procedural History

On December 23, 2013, the Plaintiff was visiting the House of Blues at Downtown Disney. At that time, Deputy Brian Mallard and Corporal Jeffrey Brough of the Orange County Sheriff's Office were providing off-duty security services to the House of Blues. Around 2:05 AM, after the House of Blues had closed, Mallard and Brough were attempting to clear guests out of the House of Blues area, as well as the adjacent Downtown Disney area. The Plaintiff alleges that, when he attempted to get Mallard's attention in order to ask if he could take a picture of his friends, Mallard attacked him, and Brough later joined in on the physical altercation. Doc. 28-1 at 14-15.

The Plaintiff filed his Complaint on July 25, 2016. Doc. 2. House of Blues Orlando Restaurant Corp. ("HOB") moved for summary judgment on September 15, 2017. Doc. 28. The

Plaintiff filed a Response on October 12, 2017, and HOB filed a Reply on October 23, 2017. Docs. 30, 31.

## II. Legal Standards

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

## III. Analysis

An employment relationship must exist in order to find HOB vicariously liable for Brough and Mallard's actions. HOB argues that the Plaintiff's claims fail as a matter of law because HOB did not have such an employment relationship with Brough and Mallard, and thus, HOB had no

control over Brough and Mallard's involvement in the altercation with the Plaintiff. *See* Doc. 28 at 8. Florida courts use a list of nonexclusive factors to determine whether an employment relationship exists. *Perkins v. Tolen*, No. 3:10-cv-851-J-37TEM, 2012 WL 1656772, at *2 (M.D. Fla. May 10, 2012). These factors are as follows:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;
> (i) whether or not the parties believe they are creating the relation of master and servant; and
> (j) whether the principal is or is not in business.

*Id.* at 3. The extent of control is considered "the most important factor." *Id.* (quoting *Kane Furniture Corp. v. Miranda*, 506 So.2d 1061, 1064 (Fla. 2d DCA 1987)).

The evidence indicates that both the sheriff's office and HOB exercised some degree of control over the details of the work. The sheriff's office apparently assigned officers to off-duty shifts, and it also maintained certain policies that off-duty officers were expected to follow. However, it was HOB that determined the timing and duration of the shifts and what the officers did during the shifts, at least within certain parameters set by the sheriff's office. It is true that part of the officers' job was to enforce the law, should the need arise. Of course, HOB did not—and could not—micromanage that part of the job. Still, HOB management would request that the officers be present in a certain area at certain times. Doc. 28-5 at 5. If HOB management needed the officers for some specific reason, they would contact them via radio and instruct them to come to the

appropriate inside or outside location. Doc. 28-5 at 5-6. HOB management would also instruct officers to remove certain guests from inside HOB, if, for example, the guests were being "passive aggressive" and HOB management wanted them to leave. Doc. 28-5 at 6. These parts of the job appear to have been entirely controlled by HOB.

Generally speaking, being a police officer is a distinct occupation from being a security guard at a night club. But here, the officers' job was not always distinct from that of a security guard. When the altercation occurred, the officers were not engaged in law enforcement activity. Instead, both the off-duty officers and HOB employees were working together to move people out of Downtown Disney and into the parking lot. Even though this task could not be fully accomplished on HOB grounds, it was still done at the direction of HOB management and alongside HOB employees.

Record evidence indicates that most of the officers' job was done under the direction of HOB; the officers did not appear to have the level of freedom of specialists working without supervision. The officers decided whether the law needed to be enforced, but there is no evidence that enforcing the law was their primary task. Instead, their job was similar to that of a security guard; they were just performing it outside the entrance of HOB instead of inside HOB. It was HOB who decided what their security needs were, not the officers or the sheriff's office. The officers did not decide whether they needed to be present for discussions with particular unruly guests, whether they needed to stay to clear the area, or whether they needed to remove unwanted guests from HOB. And, regardless of whether the scheduled shift time had elapsed, the officers had to wait until a HOB manager dismissed them before they could leave. Doc. 31-12 at 8.

Of course, being a sheriff's deputy requires specialized skills. However, most of the tasks that were apparently performed by the officers were not tasks that required those skills. Instead, they

were tasks that the officers accomplished while working directly with the HOB team. The officers supplied their own uniforms and firearms, but HOB obviously supplied the place of work. While law enforcement is not part of the regular business of HOB, providing security and clearing guests out of closed areas is. At the time of the relevant incident, the officers were helping clear the guests from the closed areas—the same task that other HOB employees were simultaneously performing.

It is not entirely clear whether an independent contractor or employment relationship was intended by the parties. Steve Creadon, the HOB manager, testified that the deputies were independent contractors rather than employees. Doc. 28-5 at 8. However, the Orange County Sheriff's Office policy that was in effect at the time referred to entities like HOB as "off-duty employers." Doc. 31-12 at 19. Creadon stated that HOB did not pay the managers directly; rather, HOB would pay the sheriff's department. Doc. 28-5 at 8. But the "invoice" for Brough indicates that he was paid directly by HOB after he finished his shift. Doc. 31-12 at 38. Mallard testified that he was paid hourly by HOB, not by the job. Doc. 30-2 at 177-78. The evidence shows that Brough and Mallard were paid by HOB directly. And, although the officers did not work exclusively for HOB, they worked at HOB over a period of years.

Ultimately, while there is some evidence that could weigh against vicarious liability, there is also evidence that tends to show HOB and the officers shared an employment relationship. A reasonable jury could find that HOB is vicariously liable for the actions of Brough and Mallard. HOB has not upheld its burden, and a grant of summary judgment would be improper here.

**IV.  Conclusion**

For the foregoing reasons, HOB's Motion for Summary Judgment (Doc. 28) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 2, 2018.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party