**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JOHN CRUZ ALICEA,

        Plaintiff,

v.                                                                               Case No: 6:16-cv-1327-Orl-31DCI

BRIAN MALLARD, JEFFREY BROUGH
and HOUSE OF BLUES ORLANDO
RESTAURANT CORP.,

        Defendants.

## ORDER

This Matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 35) filed by Brian Mallard and Jeffrey Brough, the Response (Doc. 44) filed by the Plaintiff, and the Reply filed by Mallard and Brough (Doc. 45).

### I. Factual and Procedural Background

On December 23, 2013, the Plaintiff was visiting the House of Blues in Downtown Disney. At that time, Deputy Brian Mallard and Corporal Jeffrey Brough of the Orange County Sheriff's Office were providing off-duty services to the House of Blues. Around 2:05 AM, after the House of Blues had closed, Mallard and Brough were attempting to clear guests out of the House of Blues area, as well as the adjacent Downtown Disney area. The Plaintiff alleges that, when he attempted to get Mallard's attention in order to ask if he could take a picture of his friends, Mallard attacked him, and Brough later joined in on the physical altercation.

According to the Motion for Summary Judgment, "Mallard was unaware of the Plaintiff's presence" when the Plaintiff reached out to tap Mallard on the shoulder in order to get his attention. Doc. 35 at 6 n.4. Mallard managed to knock the Plaintiff's arm to the side before the Plaintiff could

successfully tap Mallard's shoulder. Doc. 31-11 at 15. After that, the Plaintiff just stood there, and said "Hey, what the hell," shocked at Mallard's reaction. *Id.* at 15, 62. Mallard then pushed the Plaintiff, grabbed his neck, and proceeded to "throw [him] on the floor, using [his] neck." *Id.* at 15. Mallard began to kick the Plaintiff, and while he was holding on to the Plaintiff's head, the Plaintiff fell on top of him. *Id.* After the Plaintiff fell, Mallard continued to hold the Plaintiff's head "pinned against [Mallard's] chest." *Id.* At that point, Brough joined in on the altercation. According to the Plaintiff's testimony, at no point did Mallard give any verbal commands, and the Plaintiff never fought back. *Id.* at 16. Instead, the Plaintiff tried to stay still. *Id.*

Defendants Mallard and Brough filed the Motion for Summary Judgment (Doc. 35) on December 22, 2017. On January 26, 2018, the Plaintiff filed his Response (Doc. 44), and the Defendants filed their Reply (Doc. 45) on February 9, 2018.

**II.     Legal Standards**

    **A.  Summary Judgment**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue

for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"). The Court must consider all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

### B. Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an immunity from suit rather than a mere defense to liability, and it is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Unless the plaintiff's allegations state a claim of violation of a clearly established constitutional right, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001). Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in question in fact committed those acts. *Mitchell*, 472 U.S. at 526.

To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). Once the defendants establish this, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Id.* The Supreme Court has established a two-part test to determine whether qualified immunity should apply. The court must determine whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). This requires the court to determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. *Gonzalez*, 325 F.3d at 1234. The second prong of the test requires the court to determine whether the right was "clearly established." *Id.* Although it will often be appropriate to consider whether a constitutional violation has been alleged before assessing whether the right at issue is clearly established, the two determinations may be made in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### III. Analysis

#### A. Excessive Force

##### 1. Count I

Defendant Mallard seeks summary judgment on the §1983 excessive force claim in Count I based on qualified immunity. Doc. 35 at 2. The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest. *See, e.g.*, *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)). The Fourth Amendment's "objective reasonableness" standard supplies the test to determine whether the use of force was excessive. *Penley v. Eslinger*, 605 F.3d 843, 849–50 (11th Cir. 2010). Accordingly, the court must carefully balance the nature

To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). Once the defendants establish this, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Id.* The Supreme Court has established a two-part test to determine whether qualified immunity should apply. The court must determine whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). This requires the court to determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. *Gonzalez*, 325 F.3d at 1234. The second prong of the test requires the court to determine whether the right was "clearly established." *Id.* Although it will often be appropriate to consider whether a constitutional violation has been alleged before assessing whether the right at issue is clearly established, the two determinations may be made in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### III. Analysis

#### A. Excessive Force

##### 1. Count I

Defendant Mallard seeks summary judgment on the §1983 excessive force claim in Count I based on qualified immunity. Doc. 35 at 2. The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest. *See, e.g.*, *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)). The Fourth Amendment's "objective reasonableness" standard supplies the test to determine whether the use of force was excessive. *Penley v. Eslinger*, 605 F.3d 843, 849–50 (11th Cir. 2010). Accordingly, the court must carefully balance the nature

and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Id.* at 850 (citing *Graham*, 490 U.S. at 396).

> The analysis requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [the suspect] ... actively resist[ed] arrest or attempt[ed] to evade arrest by flight.

*Id.* (internal quotation marks and citations omitted). To determine whether the amount of force used by a police officer was proper, a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand. *Lee*, 284 F.3d at 1197 (internal quotation marks and citations omitted). "Use of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' " *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting *Graham*, 490 U.S. at 396), *modified*, 14 F.3d 583 (11th Cir. 1994).

The Motion states that "it is also clear that [Mallard and Brough] were acting within the scope of their discretionary authority during the detention and arrest of the Plaintiff." Doc. 35 at 10. Assuming Mallard was acting within the scope of his discretionary authority when the initial altercation occurred, Mallard still would not be entitled to qualified immunity on the excessive force claim in Count I. Viewing the facts in the light most favorable to the Plaintiff, Mallard (1) violated the constitutional rights of the Plaintiff and (2) did so by violating clearly established law.

The severity of the crime here was virtually nonexistent; the Plaintiff testified that he did not commit any crime at all, and the Defendants' accusations are not persuasive. Although the Plaintiff reached out to touch Mallard's shoulder, he testified that he did not actually touch it. Doc. 31-11 at 62. According to the Plaintiff's testimony, he was merely approaching Mallard to ask for clarification on the instructions to leave. The Plaintiff simply approaching Mallard posed no threat whatsoever to the safety of the officers or others. He did not actively resist arrest, nor did he try to

flee. Even after Mallard struck his hand, the Plaintiff just stood still. *Id.* at 63. No reasonable officer would believe additional force was necessary under these circumstances. The Plaintiff has upheld his burden of showing that his constitutional rights were violated by Mallard when Mallard pushed him, kicked him, and slammed him on the ground, even before Brough joined in on the altercation. Doc. 31-11 at 15. Taking the evidence in the light most favorable to the Plaintiff, the Plaintiff has also shown that Mallard violated clearly established law. Here, there was no justification for the officer's continued use of force after initially striking the Plaintiff's hand away, and the use of force without justification violates well-established constitutional law. *See Stephens v. DeGiovanni*, 852 F.3d 1298, 1316 (11th Cir. 2017).

### 2. Count V

Defendant Mallard also seeks summary judgment on Count V, arguing that his use of force was reasonable and did not violate state law. Doc. 35 at 15. Courts analyze battery claims for excessive force by examining whether "the amount of force used was reasonable under the circumstances." *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996). An officer's reasonable belief that the force was "necessary to defend himself or another from bodily harm while making the arrest" is a complete defense to an excessive use of force claim. *Id.* (quoting § 776.05(1), Fla. Stat. (1995)).

Mallard and Brough indicate that, for purposes of the instant motion, they agree to accept that the Plaintiff was not the aggressor. Doc. 35 at 7 n.7. Taking the evidence in the light most favorable to the Plaintiff, the Plaintiff never touched Mallard. Perhaps when Mallard initially saw a hand in his peripheral vision, swatting away that hand was justified. But when the Plaintiff stood back and did not touch Mallard, any reasonable justification for Mallard using force against the Plaintiff ceased to exist. Mallard could have instructed the Plaintiff to put his hands on his head, or

even told him to get on the ground, before pushing him, kicking him, and slamming him on the ground, as the Plaintiff testified Mallard did. Doc. 31-11 at 15. The Reply criticizes the Plaintiff for "fail[ing] to retreat" and failure to "communicate that he did not intend to harm" Mallard. Doc. 45 at 3. But Mallard had no reason to believe that the Plaintiff intended to harm Mallard. Based on the Plaintiff's testimony, the force used by Mallard was unreasonable under the circumstances. Accordingly, there remain disputed issues of material fact as to Count V.

### B. Unlawful Seizure: Counts I and II

Defendants Mallard and Brough seek summary judgment on the § 1983 claims for unlawful seizure in Count I and Count II based on qualified immunity. Doc. 35 at 2, 16. An individual has a constitutional right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. An arrest qualifies as a seizure of a person. *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (citations omitted). The reasonableness of an arrest depends on whether probable cause existed to make the arrest. *Id.* at 1326. An arrest without probable cause violates the Constitution and provides a basis for a Section 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citation omitted). An officer has probable cause to arrest when the arrest is objectively reasonable based on the totality of the circumstances. *Coffin v. Brandau*, 642 F.3d 999, 1006 (11th Cir. 2011). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Coffin*, 642 F.3d at 1006–07 (quoting *Lee,* 284 F.3d at 1195). Whether a particular set of facts gives rise to probable cause for arrest depends on the elements of the crime. *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004). Where the

facts are undisputed, whether probable cause existed is a question of law. *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990).

"In the context of a qualified immunity defense on an unlawful search or arrest claim, [courts] ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (internal quotation and citation omitted); *see Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only 'arguable probable cause,' i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed.") (citations omitted). Under the arguable probable cause standard, "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in [light] of the information the officer possessed." *Montoute*, 114 F.3d at 184. As with probable cause, the arguable probable cause inquiry "naturally depends on the elements of the *alleged* crime."[1] *Pruitt v. Cote*, No. 6:12-cv-1038-ORL-28, 2013 WL 4700185, at *4 (M.D. Fla. Aug. 30, 2013) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir.2007) (internal quotation marks omitted) (emphasis added).

The officers were clearly acting within the scope of their discretionary authority when they arrested the Plaintiff. Consequently, the Court must determine whether the Plaintiff has met his burden of establishing that (1) his constitutional rights were violated, and (2) the Defendants violated clearly established law. The Plaintiff was arrested for resisting an officer with violence,[2] battery on

---

[1] The Defendants appear to argue that arguable probable cause is present if a reasonable officer could have believed there was probable cause to arrest the Plaintiff for any crime whatsoever, but none of the cases cited by the Defendants actually support that proposition.

[2] Although the Defendants refer to the Plaintiff's arrest for "resisting an officer *without* violence," Doc. 35 at 17 (emphasis added), the Arrest Affidavit (Doc. 35-2 at 6) they submitted as

a law enforcement officer, and disorderly intoxication. Arrest Affidavit, Doc. 35-2 at 6. Viewing the evidence in the light most favorable to the Plaintiff, there is no information that would cause a prudent person to believe the Plaintiff had committed any of those crimes. The Plaintiff testified that he never touched the officers. The Plaintiff—and a witness, Priscilla Rivera— also testified that he did not drink that night, nor did he smell of alcohol. Additionally, approaching an officer to ask him a question, under these circumstances, cannot be termed "disorderly." The Plaintiff has met his burden of showing that his constitutional rights were violated.

In order to meet his burden of showing that the Defendants violated clearly established law, the Plaintiff must also show that the Defendants lacked arguable probable cause for the arrest. In this situation, there is no basis for believing the officers were merely mistaken about anything. They claimed to have witnessed first-hand all of the events that would give rise to probable cause. Either they observed that the Plaintiff was intoxicated, disorderly, and that he violently resisted arrest and battered an officer, or they did not. There is no allegation that there were some factors that would lead one officer to mistakenly find probable cause where another would not. While proof of all elements of a given crime is not necessary for arguable probable cause, here, taking the Plaintiff's evidence as true, the objective facts available to the Defendants at the time of arrest provide no basis for even suspecting the Plaintiff of any of the charged crimes. Accordingly, the Defendants are not entitled to summary judgment on the issue of unlawful seizure under § 1983.

---

an attachment to the Motion makes clear that the Plaintiff was arrested for resisting an officer *with* violence. However, probable cause for resisting an officer without violence is discussed below in the context of the Plaintiff's malicious prosecution claim, as it appears the Plaintiff was ultimately tried for resisting an officer without violence.

### C. Malicious Prosecution: Counts III and IV

Defendants Mallard and Brough seek summary judgment on the malicious prosecution §1983 claims in Counts III and IV on the basis of qualified immunity. Doc. 35 at 2, 20. A malicious prosecution claim under § 1983 requires proof of the six elements of the common law tort and a violation of the Fourth Amendment right to be free from unreasonable seizure. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). The common law elements of malicious prosecution in Florida are as follows:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

*Id.* As with unlawful seizure, qualified immunity applies to § 1983 claims for malicious prosecution if the defendant had arguable probable cause for the alleged crime. *See Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010).

Because it is clear that, in arresting and causing a judicial proceeding to be instituted against the Plaintiff, the Defendants were acting within the scope of their discretionary authority, "the burden shifts to the [P]laintiff to show that the defendant[s] [are] not entitled to qualified immunity." *Mack v. Mazzarella*, 554 F. App'x 800, 802 (11th Cir. 2014). In the Motion and their Reply, Defendants only dispute two of the elements of malicious prosecution: whether there was probable cause for the original proceeding and whether there was malice on the part of the present Defendant. While the Arrest Affidavit indicates that the Plaintiff was arrested for resisting *with* violence, the trial transcript indicates that the Plaintiff was ultimately tried on charges of battery on a law enforcement officer and resisting an officer *without* violence. Doc. 31-15 at 335-36.

As discussed above, the Court has found that, taking the Plaintiff's evidence as true, there was no probable cause, arguable or otherwise, for the charge of battery on a law enforcement officer. But the Defendants claim that probable cause to arrest the Plaintiff also arose when the Plaintiff was asked to leave the area, did not immediately do so, and instead approached Mallard to ask him a question. This, the Defendants argue, was "resisting an officer without violence." Doc. 45 at 1. But disobeying an instruction that comes from an off-duty officer does not automatically constitute "resisting an officer." The off-duty officers' instructions were also being given by House of Blues security guards and employees; the instructions to leave the area did not become a "lawful execution of a legal duty" within the meaning of Florida Statute § 843.02 simply because off-duty officers gave them. Rather, the instructions to leave were generally communicated by both officers and non-officers to a very large group of people. And, there was no indication that the Plaintiff defied an order to leave. What he was actually doing, according to his testimony, was seeking clarification on the general instructions that had been given. The mere fact that he approached a uniformed police officer who had given general instructions to leave does not constitute arguable probable cause to charge him with resisting an officer without violence. Taking the evidence in the light most favorable to the Plaintiff, no reasonable officer under the same circumstances could have believed that probable cause existed to charge the Plaintiff with resisting an officer. The Plaintiff has upheld his burden of establishing a violation of his constitutional rights and a violation of clearly established law by the Defendants.

As for the question of malice, the Plaintiff's position is not that the officers were mistaken, but that they knew he did not resist or batter an officer. Taking the Plaintiff's testimony as true, the Defendants made false allegations in order to charge the Plaintiff with crimes he did not commit.

That certainly constitutes malice. Accordingly, the Defendants are not entitled to summary judgment on the § 1983 claims for malicious prosecution in Counts III or IV.

### D. Statutory Immunity: Counts III, IV, and V

Defendant Mallard seeks summary judgment on the state law claims in Counts III and V based on statutory immunity. Doc. 35 at 2, 21. Defendant Brough seeks summary judgment on the state law claim in Count IV, also based on statutory immunity. *Id.* Florida Statute § 768.28 immunizes Florida law enforcement officers from individual liability for tortious acts performed within the scope of their employment, unless they act "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Drudge v. City of Kissimmee*, 581 F. Supp. 2d 1176, 1194-95 (M.D. Fla. 2008). "In the context of § 768.28(9)(a), conduct committed in bad faith has been characterized as conduct acted out with actual malice." *Kastritis v. City of Daytona Beach Shores*, 835 F. Supp. 2d 1200, 1225 (M.D. Fla. 2011). Willful and wanton conduct "must be worse than gross negligence and more reprehensible and unacceptable than mere intentional conduct." *Id.* (internal quotations and citations omitted).

The Defendants argue that they are entitled to summary judgment on the state law claims in Counts III, IV, and V because "undisputed material facts show that the Defendants did not act in bad faith or with a malicious purpose or in a manner exhibiting wanton and willful disregard of human rights and safety." Doc. 35 at 22. However, the Plaintiff's testimony, along with the trial testimony of witness Priscilla Rivera, creates a genuine dispute of material fact as to whether the officers acted in bad faith. If they did untruthfully claim that the Plaintiff was drunk and that he battered and resisted an officer when he did not, and they physically attacked him when they had no reasonable justification for doing so, then they acted in bad faith for purposes of statutory

immunity. The Defendants are not entitled to summary judgment on the state law claims in Counts III, IV, or V.

## IV. Conclusion

For the foregoing reasons, the Motion for Summary Judgment filed by Brian Mallard and Jeffrey Brough (Doc. 35) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 12, 2018.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party