# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**JOHN CRUZ ALICEA,**

    **Plaintiff,**

**v.**            **Case No: 6:16-cv-1327-Orl-31DCI**

**BRIAN MALLARD and JEFFREY BROUGH,**

    **Defendants.**

_____

## REPORT AND RECOMMENDATION

  This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION TO TAX ATTORNEYS' FEES AND COSTS (Doc. 117)** |
| **FILED:** | **August 14, 2018** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part**.

## I.  Background

  In June 2016, Plaintiff filed in state court an eleven-count Complaint against the five Defendants in this case. Doc. 2. In the Complaint, Plaintiff alleged various violations, mostly via 28 U.S.C. § 1983, related to the late-night arrest of Plaintiff at the House of Blues in what was then Downtown Disney. Doc. 2. Specifically, Plaintiff alleged the following claims against the following Defendants:

- Count I – § 1983 excessive force claim against Orange County Sheriff's Office (OCSO) Deputy Brian Mallard;

- Count II – § 1983 excessive force claim against OCSO Deputy Jeffrey Brough;

- Count III – § 1983 and state law malicious prosecution claim against Deputy Mallard;

- Count IV - § 1983 and state law malicious prosecution claim against Deputy Brough;

- Count V – state law battery claim against Deputy Mallard;

- Count VI – state law battery claim against Deputy Brough;

- Count VII – § 1983 supervisory liability claim against OCSO Sheriff Jerry Demings;

- Count VIII – § 1983 supervisory liability claim against Sheriff Demings;

- Count IX – vicarious liability claim against House of Blues and Live Nation;

- Count X – negligent hiring claim against House of Blues and Live Nation; and

- Count XI – negligent training claim against House of Blues and Live Nation.

Doc. 2.

On July 25, 2016, Defendants removed this case from state court, and the Complaint filed in state court remained the operative pleading throughout the course of this case. Docs. 1; 2.

In August 2016, Plaintiff voluntarily dismissed his claims against Sheriff Demings (Counts VII and VIII), and, in December 2017, Plaintiff voluntarily dismissed his claims against Live Nation (Counts IX, X, and XI). *See* Docs. 13; 14; 38; 39. Thus, by January 2018, only the claims against Defendants House of Blues, Deputy Mallard, and Deputy Brough remained.

In April 2018, the parties filed their Joint Pretrial Statement. Doc. 51. Therein, it was stated that Plaintiff sought damages of at least $900,000 from each of the deputies. *Id.*

On the first day of trial, June 25, 2018, Plaintiff filed a notice that he settled with Defendant House of Blues (Doc. 88) and the Court dismissed House of Blues from this case (Doc. 91).

The case proceeded to a jury trial as to Deputies Mallard and Brough. Following three days of trial, the jury returned a verdict finding no liability whatsoever as to Deputy Brough. Doc.

111.  As to Deputy Mallard, the jury found no liability  as to Counts I and V.  *Id*.  But as to Count

III, the jury marked "yes" as to the special interrogatory:

> Did Deputy Brian Mallard maliciously  institute  a criminal  proceeding against the
> Plaintiff  in the absence of probable  cause which was a legal cause of injury,  loss,
> or damage to the Plaintiff?

*Id*.  But the jury marked "no" to the interrogatory  concerning  compensatory  damages:

> If you answered yes to any of the above questions  related to Deputy Mallard, did the
> Plaintiff  suffer damage as a result of Deputy Mallard's unlawful conduct?

*Id*.  Thus, despite being instructed as to the issue of nominal  damages  (*see* Doc. 105) and despite

being  queried upon return of their  verdict concerning  their intention  to award no compensatory

damages  (*see* Doc. 112 at 2), the jury chose to award no compensatory  damages whatsoever.

Nevertheless, when asked, "Should  Punitive  Damages also be awarded against Deputy Mallard?"

the jury marked "yes" and wrote in "$4,000"  when asked, "If Yes, what amount?"  Doc. 111.

Following  the return of that verdict, the Court did not immediately  enter judgment.  Instead,

the Court first received briefing  from the parties.  Plaintiff filed a motion seeking entry of judgment

based on the jury verdict and requested various forms of alternative relief, including  the entry of a

nominal  compensatory  damages award.  Doc. 112.  In response, Deputy Mallard conceded that

"entering  a final  judgment  based on the jury's  verdict is the procedurally  correct action,"  but

purported  to reserve his "right  to file a post-judgment  motion."  Doc. 113.  Deputy Mallard

opposed all the alternative  relief requested by Plaintiff.  *Id*.  Finding  that the parties agreed that

judgment  should be entered based on the jury's  verdict, the Court directed the Clerk to enter

judgment  for Plaintiff  and against Deputy Mallard in the amount of $4,000.  Doc. 114.  On July

31, 2018, the Clerk entered final judgment  as directed.  Doc. 115.  Neither party filed a motion

following  entry of final judgment.

Plaintiff then filed a proposed Bill of Costs (Doc. 116) and a motion for attorney fees pursuant to 28 U.S.C. § 1988 (Doc. 117, the Motion). In the Bill of Costs, Plaintiff sought $2,388.75 in costs. Doc. 116. In the Motion, Plaintiff asserts that as a prevailing party in a claim brought under § 1983, he is entitled to reasonable attorney fees and costs. Doc. 117. As to the lodestar, Plaintiff seeks the following:

| | Rate | Hours | | |
|---|---|---|---|---|
| Bradley N. Laurent | $375.00 | 394.77 | | $148,037.50 |
| Carlus Haynes | $375.00 | 82.83 | | $31,061.25 |
| | | | | |
| | | | Total: | $179,098.75 |

*Id*. In support of that lodestar, Plaintiff's counsel, Mr. Laurent and Mr. Haynes, each attached an affidavit in which they found each other's rates "to be a reasonable hourly rate" and averred simply that: "All of the above fees and expenses were actually and necessarily incurred as a result of having to prosecute a claim against the Defendant, Brian Mallard." Docs. 117-2; 117-3. Plaintiff also attached to the Motion detailed billing records for each attorney. Doc. 117-1. In an attempt to support the requested hourly rates, Plaintiff discussed each of the *Johnson* factors and also cited a number of similar cases, but none awarding a rate in excess of $295 per hour. Doc. 117 at 6-10. As to the reasonableness of the hours billed, Plaintiff provided no specific argument or explanation, relying instead on the affidavits of counsel and the billing records attached to the Motion. *Id*. at 10-11. Plaintiffs provided similarly little argument or information concerning the requested costs, relying simply on the invoices attached to the Bill of Costs. *Id*. at 11-12.

Deputy Mallard filed a response to the Bill of Costs, asserting that the mediation cost ($460.84) and attorney travel expenses ($435.75) are not properly taxable. Doc. 118.

In response to the Motion, Deputy Mallard asserts that the Court should award no attorney fees to Plaintiff, but also makes alternative arguments attacking the reasonableness of both the rates sought and the hours billed. Doc. 119. As an initial matter, at no point in his response does Deputy Mallard dispute that Plaintiff is a prevailing party pursuant to § 1988, and all of Deputy Mallard's arguments are premised upon the fact that Plaintiff is, in fact, such a prevailing party. That said, Deputy Mallard argues based upon *Farrar et al. v. Hobby*, 506 U.S. 103 (1992), that Plaintiff should recover no attorney fees at all due to his limited degree of success. Doc. 119 at 5-7. But, assuming Plaintiff is entitled to some fee, Deputy Mallard asserts that the Court should determine a reasonable hourly rate to be between $275 and $290 for both counsel. *Id*. at 8-10. Deputy Mallard then attacks the reasonableness of the hours billed, asserting that certain hours should be billed at a paralegal rate and other hours should be reduced entirely. *Id*. at 11-13. Deputy Mallard's arguments concerning the reasonableness of both the hourly rates and the hours billed is supported by a detailed affidavit of attorney Robert E. Bonner, providing his opinion as a fee expert. Doc. 119-1 (the Bonner Affidavit). According to Mr. Bonner, the lodestar should be calculated as follows:

|  | Rate | Hours |  |
|---|---|---|---|
| Bradley N. Laurent | $275.00 - $290.00 | 256.31 | $70,485.25 - $74,329.90 |
| Carlus Haynes | $275.00 - $290.00 | 67.83 | $18,653.25 - $19,670.70 |
| Paralegal | $80.00 - $90.00 | 46.11 | $3,688.80 - $4,149.90 |
|  |  |  | Total: $92,827.30 - $98,150.50 |

*Id*. at 12. Finally, Deputy Mallard argues that, following the calculation of the lodestar, the Court should apply an across-the-board reduction to the lodestar amount to account for the limited success obtained by Plaintiff. *Id*. at 13-16. Although no specific reduction is sought in Deputy

Mallard's response, Mr. Bonner opined that the lodestar amount "should be substantially reduced, even by as much as 50% due to the minimal result obtained." Doc. 119-1. Thus, the lowest reasonable fee suggest by Deputy Mallard is $46,413.65 (i.e. $92,827.30 reduced by 50%).

Plaintiff did not seek leave to reply to either of Deputy Mallards' responses, and this matter was referred to the undersigned for a Report and Recommendation and is now ripe for consideration. Doc. 120.

## II.   Discussion

As set forth in more detail in the paragraphs that follow, the undersigned respectfully recommends that the Court award Plaintiff attorney fees in the amount of $67,077.00 and costs in the amount of $1,492.20. Specifically, the undersigned recommends that the Court calculate the lodestar as $134,154.00, and that the Court thereafter reduce that lodestar amount by 50% to account for Plaintiff's limited success in this case.

### a.   Entitlement to an Award of Attorney Fees

Although Deputy Mallard never disputes that Plaintiff is a prevailing party pursuant to § 1988, Deputy Mallard argues based upon *Farrar* that Plaintiff should recover no attorney fees at all due to his limited degree of success. Doc. 119 at 5-7.

In *Farrar*, the Supreme Court addressed the award of attorney fees under § 1988 when a jury awards only nominal damages. 506 U.S. at 114 ("Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988."). The Court explained that:

> In some circumstances, even a plaintiff who formally "prevails" under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party. As we have held, a nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his "absolute" right to procedural due process through enforcement of a judgment against the defendant. In a civil rights

suit for damages, however, the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury. Whatever the constitutional basis for substantive liability, damages awarded in a § 1983 action "must always be designed 'to *compensate injuries* caused by the [constitutional] deprivation.'" When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all.

*Id.* at 115-16 (citations omitted, emphasis in original).

But here, although Plaintiff received no compensatory damages, he received more than nominal damages – he received $4,000 in punitive damages, which amount was reduced to a $4,000 judgment without objection by Deputy Mallard. Because this is not a case in which Plaintiff received only an award of nominal damages, *Farrar* is distinguishable.

The undersigned recognizes a dearth of case law directly as to this issue, but the greater weight of authority seems to be in favor of counting punitive damages when considering whether an award is only nominal under *Farrar*. For example, in *Quainoo v. City of Huntsville, Ala.*, 611 F. App'x 953, 954-55 (11th Cir. 2015), the Eleventh Circuit issued an unpublished opinion that reasoned as follows:

We agree with the district court that Defendants' argument that Quainoo was not entitled to any attorney's fees—based on *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)—is misplaced. " 'When a plaintiff recovers only nominal damages because of [her] failure to prove an essential element of a [her] claim for monetary relief, the only reasonable fee is usually no fee at all.' " *Gray,* 613 F.3d at 1040 (quoting *Farrar,* 506 U.S. at 115, 113 S.Ct. at 575).

Here, however, Quainoo—who received $2,000 in compensatory damages and $2,000 in punitive damages—did not receive simply nominal damages. First, a total of $4,000 in damages, while modest compared to the amount sought, far exceeded the damages amount ordinarily thought to be "nominal"—$1 or $100. [citations omitted.] Second, the Supreme Court in *Farrar* explained that a "plaintiff who seeks compensatory damages but receives no more than nominal damages" often is not entitled to attorney's fees despite being a prevailing party under § 1988. 506 U.S. at 115, 113 S.Ct. at 575. Quainoo, in contrast, did receive not only compensatory damages but also punitive damages, and the jury specifically found that Defendants Watkins's and Aldridge's actions, in subjecting Quainoo to excessive force, "were the proximate or legal cause of damages sustained by

Quainoo." *Cf. id.* at 115, 113 S.Ct. at 575 ("In a civil rights suit for damages ... the awarding of nominal damages ... highlights the plaintiff's failure to prove actual, compensable injury.") Thus, the district court properly found that Quainoo was entitled to reasonable attorney's fees and costs.

611 F. App'x 953, 954-55.   Thus, there is persuasive authority from the Circuit both that the amount of punitive damages should be considered in determining whether the damages recovered were nominal and that an award of punitive damages, considered along with a jury determination of liability, is something more than nominal damages in the context of *Farrar. See id.*; *cf. Gray ex rel. Alexander v. Bostic*, 720 F.3d 887, 893 (11th Cir. 2013) (explaining the Eleventh Circuit's approach to applying *Farrar* in a case involving a nominal damages award of $1).   Other courts have also taken into consideration punitive damages in determining whether an award was nominal for purposes of *Farrar. See, e.g.*, *Abner v. Kansas City S. Ry. Co.*, 541 F.3d 372, 384 (5th Cir. 2008) (finding an award of $1 in nominal damages and $125,000 in punitive damages to be "a far cry from the nominal damages from Farrar"); *Pino v. Locascio*, 101 F.3d 235, 238 (2d Cir. 1996) ("The Court [in *Farrar*] added that fee awards are not appropriate where, having failed to capture compensatory or punitive damages, a plaintiff wins only 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated.'"); *Winston v. O'Brien*, 951 F. Supp. 2d 1004, 1005 (N.D. Ill. 2013), *rev'd,* 770 F.3d 1178 (7th Cir. 2014), *rev'd on other grounds*, 773 F.3d 809 (7th Cir. 2014) (finding an award of $1 in compensatory damages and $7,500 in punitive damages to be distinguishable from *Farrar*); *Richardson v. City of Chicago*, 2013 WL 2451107, at *2-3 (N.D. Ill. June 5, 2013), *aff'd sub nom.* 740 F.3d 1099 (7th Cir. 2014) (finding that *Farrar* did not apply to prevent an award of attorney fees where jury awarded nominal damages and $3,000 in punitive damages directly against an officer – an award of $3,000 in punitive damages "is not a nominal award"); *Williams v. Kaufman Cty.*, 2003 WL 21755913, at *4-5 (N.D. Tex. July 30, 2003) (considering *Farrar* and finding an award of attorney fees calculated using the lodestar

method appropriate in a case involving a jury finding of liability, nominal compensatory damages, and $45,000 in punitive damages); *McLindon v. Russell*, 108 F. Supp. 2d 842, 846 (S.D. Ohio 1999) *rev'd and vacated on other grounds*, 19 F. App'x 349 (6th Cir. 2001) (in a case involving nominal damages and $200 in punitive damages, reasoning that, "The clear import of the punitive damages award was to send a message to corrections officers and deter future misconduct, and distinguishes this case from *Farrar*.").

In contrast to the foregoing authority, Deputy Mallard relies solely upon a case in which a district court, citing to *Farrar*, found that an award of no compensatory damages and $5,000 in punitive damages was such limited success that no fee should be awarded. *Leggett v. Gold Int'l, Inc.*, 2007 WL 439033, at *1 (S.D. Ga. Feb. 8, 2007). While the Court in *Leggett* utilized language and reasoning from *Farrar* in finding that the plaintiff's limited success justified no fee at all, the Court did not actually find that the punitive damages award itself was nominal and appears to have taken into consideration the specific facts of the case in deciding against an award of attorney fees. *See id*. Regardless, it does not appear that any court has followed *Leggett*, and the undersigned finds unpersuasive Deputy Mallard's argument that a punitive damages award in the thousands of dollars is nominal under *Farrar*. Accordingly, having found that the award in this case is not nominal, the undersigned will consider the calculation of the lodestar and any reductions thereto.[1] *See Williams v. Kaufman Cty.*, 2003 WL 21755913, at *4–5 (N.D. Tex. July 30, 2003) (explaining

---

[1] Deputy Mallard also makes a cursory argument that Plaintiff should recover no attorney fee because although the jury found liability as to Count III, Plaintiff alleged both state law and constitutional claims in Count III and the jury verdict did not "specifically" find a violation of Plaintiff's constitutional rights and "arguably" the jury found only a violation of state law. Doc. 119 at 7-8. In support, Deputy Mallard cited to a case in which a plaintiff lost on his § 1983 claim. That is not the case here. Plaintiff prevailed entirely on Count III. That claim asserted a claim of malicious prosecution pursuant to both state law and § 1983. There is nothing in the jury's verdict to indicate plaintiff's success was not full and, thus, did not apply to all avenues of relief sought in that count.

that after finding that damages were not "nominal" under *Farrar*, "the court applies the lodestar method and makes an appropriate reduction for degree of success in light of the holdings in *Hensley [and] Farrar . . .*").

### b. Amount of Attorney Fees

The Court uses the familiar "lodestar" method in determining a reasonable fee award, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable. *See Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quotations and citation omitted). In determining if the requested rate is reasonable, the Court may consider the applicable *Johnson* factors and may rely on its own knowledge and experience. *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.") (quotations and citation omitted); *see Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[2] "The

---

[2] The *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The Eleventh Circuit has subsequently explained that "district courts may, but are not required to, consider [the *Johnson*] factors since many 'usually are subsumed within the initial

applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299 (citations omitted).  Instead, satisfactory evidence generally includes evidence of the rates charged by lawyers in similar circumstances or opinion evidence of reasonable rates. *Id.*

As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  In demonstrating that their hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.  Likewise, a party opposing a fee application should also submit objections and proof that are specific and reasonably precise. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).  A fee opponent's failure to explain with specificity the particular hours viewed as "unnecessary or duplicative" is generally fatal. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)).  "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (quotations omitted).  But in cases where the fee motion and supporting documents are voluminous, an hour-by-hour analysis by the court is not required,

---

calculation of hours reasonably expended at a reasonable hourly rate.'" *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 801 (11th Cir. 2012) (quoting *ADA v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006)).

and the court may apply across-the-board percentage cuts in the number of hours so long as the court provides a concise but clear explanation of its reasons for the reduction. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). There is a strong presumption that the lodestar figure is reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010).

i.  *Reasonable Rate*

Plaintiff has requested an hourly rate of $375 for each of his counsel. In support of that rate, Plaintiff's counsel, Mr. Laurent and Mr. Haynes, each attached an affidavit in which they found each other's rates "to be a reasonable hourly rate." Docs. 117-2; 117-3. Plaintiff also discussed each of the *Johnson* factors and cited several similar cases, but none awarding a rate in excess of $295 per hour. Doc. 117 at 6-10. In particular, Plaintiff cites to a case in which this Court awarded Plaintiff's counsel a rate of $285 per hour in a civil rights case. *Id*. at 7 (citing *Holloway v. City of Orlando*, Case No. 6:15-cv-129-PGB-GJK, 2017 WL 397471 (M.D. Fla. Jan. 30, 2017).

In response to the Motion, Deputy Mallard asserted that the Court should determine a reasonable hourly rate to be between $275 and $290 for both counsel. Doc. 119 at 8-10. Deputy Mallard then attacked the reasonableness of the hours billed, asserting that certain hours should be billed at a paralegal rate and other hours should be reduced entirely. *Id*. at 11-13. Deputy Mallard's arguments concerning the reasonableness of both the hourly rates and the hours billed is supported by the Bonner Affidavit. Doc. 119-1.

Relying upon the Court's own experience and expertise in these matters, as well as the cases cited by Plaintiff, the undersigned finds that an hourly rate of $290 is reasonable for both of Plaintiff's counsel. This is an amount agreed-to by Deputy Mallard and is the highest rate that Plaintiff's counsel have ever been awarded, so far as the undersigned can determine from the

authority cited by the parties. The undersigned finds the Court's reasoning and conclusion in *Holloway* to be particularly instructive and persuasive, as it is a very recent decision involving the same counsel in a similar type of case. There, the Court awarded Plaintiff's counsel a rate of $285 per hour, a significant increase over a rate awarded to these same counsel about three years prior (a rate of $240 per hour in *Smith v. Chandler*, Case No. 6:11-cv-1332-Orl-31KRS, 2013 WL 3323187 (M.D. Fla. July 1, 2013)) due to inflationary considerations brought on by the passage of three years, the greater skill, experience and reputation in their litigation of civil rights cases over those three years, and the fact that counsel achieved a greater degree of success in that case than the prior case. *Id*. Here, the Court has weighed inflationary considerations since last year and the greater experience Plaintiff's counsel obtained in the past year. Also, the undersigned notes that Plaintiff's counsel secured less success than they did in *Holloway*, so an *increase* in the hourly rate based on greater success than in other cases is not appropriate. That said, the undersigned has not reduced the hourly rate on the basis of a lack of success, as that is a factor that will be considered *infra* as a basis for a reduction in the overall lodestar amount. Further, $290 per hour is well within the range of reasonable hourly rates for civil rights attorneys with comparable skills and experience in Central Florida. *Holloway*, 2017 WL 397471, at *3.

Finally, Plaintiff failed to satisfy his burden to establish the reasonableness of the rates requested. Meeting that burden requires more than just affidavits from Plaintiff's counsel supporting each other's requested rates as "reasonable." *See* Docs. 117-2; 117-3. Further, Deputy Mallard has disputed the requested hourly rates through the affidavit of a fee expert. And while Plaintiff has also provided some case law for the Court's consideration, the record is devoid of evidence that would support the requested rate of $375 per hour. Further, Plaintiff's discussion of the *Johnson* factors, which the undersigned has considered, do little to justify the requested rate,

although the undersigned finds that those factors support a rate of $290 per hour. Specifically, the undersigned finds that this case did not present particularly novel or difficult questions, did not require an inordinate amount of time to prosecute, did not require any particular skill to prosecute, did not preclude counsel from taking on other cases, and was not undesirable because, for example, Plaintiff serves honorably as an active duty member of U.S. Navy SEAL Team 4. In other words, Plaintiff has failed to satisfy his burden to support the rate requested for his counsel.

### ii.   *Hours Expended*

As to the reasonableness of the hours billed, Plaintiff provided no specific argument or explanation, relying instead on the affidavits of counsel and the billing records attached to the Motion. Docs. 117 at 10-11; 117-1. In their affidavits, Plaintiff's counsel averred simply that: "All of the above fees and expenses were actually and necessarily incurred as a result of having to prosecute a claim against the Defendant, Brian Mallard." Docs. 117-2; 117-3. In response to the Motion, Deputy Mallard asserted that certain hours should be billed at a paralegal rate and other hours should be reduced entirely. *Id*. at 11-13. Deputy Mallard's arguments concerning the reasonableness of the hours billed is supported by the Bonner Affidavit. Doc. 119-1. Plaintiff chose not to seek leave to reply to Deputy Mallard's specific arguments seeking a reduction in the hours billed. The undersigned will address each of the disputed categories of hours billed.

First, the undersigned disagrees with Deputy Mallard that 46.11 hours of specifically identified time should be billed at a paralegal rate. While the Plaintiff's billing records are rather concise, the undersigned finds that the complained-of billing entries were reasonably categorized as attorney-billable time. And the undersigned notes that Deputy Mallard has not contended that these 46.11 hours were unnecessary or duplicative, simply that they should have been billed at a paralegal rate. Second, the undersigned agrees in part with Deputy Mallard's contentions that

Plaintiff's counsel – experienced civil rights litigators – spent an unreasonable amount of time drafting the straight-forward Complaint and responding to the motion for summary judgment. Thus, the undersigned recommends a reduction of 5 hours from the amount time Mr. Laurent spent drafting the Complaint and a reduction of 10 hours from the time Mr. Laurent spent drafting the response to the motion for summary judgment.   Third, while the undersigned agrees with Deputy Mallard that a reduction is appropriate in relation to the hours spent as to Defendant House of Blues, the undersigned will address that issue *infra* as a part of an overall reduction in the lodestar to account for Plaintiff's limited success and finds that a reduction in relation to the specific hours attributable to House of Blues (i.e. approximately 46.55 hours) is not appropriate.   *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1352 (11th Cir. 2008).   Fourth and finally, the undersigned disagrees with Deputy Mallard's contentions that the 20 hours Mr. Haynes spent preparing for the trial testimony of Deputy Mallard's expert was excessive under the circumstances of this case. Thus, in sum, the undersigned recommends a 15-hour reduction of Mr. Laurent's billable hours in this case, as the undersigned finds that those hours were unreasonable.

### iii. *The Lodestar*

Based upon the foregoing recommendations, the undersigned calculates a lodestar of $134,154.00 as follows:

|  | Rate | Hours |  |  |
|---|---|---|---|---|
| Bradley N. Laurent | $290.00 | 379.77 |  | $110,133.30 |
| Carlus Haynes | $290.00 | 82.83 |  | $24,020.70 |
|  |  |  |  |  |
|  |  |  | Total: | $134,154.00 |

However, after a consideration of the nature of the success Plaintiff obtained in this case, the undersigned finds that an across-the-board reduction of the lodestar by 50% is appropriate, resulting in a recommended attorney fee award of $67,077.00.

Deputy Mallard in response to the Motion argued that, following the calculation of the lodestar, the Court should apply an across-the-board reduction to account for the limited success obtained by Plaintiff. Doc. 119 at 13-16. Although no specific reduction was sought by Deputy Mallard's response, Mr. Bonner opined in his affidavit that the lodestar amount "should be substantially reduced, even by as much as 50% due to the minimal result obtained." Doc. 119-1. The undersigned agrees with Mr. Bonner that the lodestar should be reduced by 50%.

"Among the many considerations a court must entertain when calculating a § 1988 award, 'the most critical factor is the degree of success obtained.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley,* 461 U.S. at 436). Considering the degree of success obtained, Courts have made substantial reductions to the calculated lodestar to account for limited success. *See, e.g.*, *Barker v. Niles Bolton Assocs. Inc.*, 316 F. App'x 933, 945 (11th Cir. 2009) (affirming district court's reduction of lodestar by 75% due to the plaintiff's limited success against multiple defendants); *Langford v. Hale Cty. Alabama Comm'n*, 2016 WL 4976859, at *10 (S.D. Ala. Sept. 16, 2016) (reducing a lodestar by 50% to take into account limited success at trial).

Although there is some lack of clarity concerning what Plaintiff sought in this case as far as monetary relief, it is apparent that Plaintiff sought an award of at least $900,000.00 in damages at the time the joint pretrial statement was submitted to the Court. *See* Doc. 51. In seeking an award of attorney fees, it appears that Plaintiff has sought to recover all the fees incurred in the entirety of the prosecution of this action, and, in doing so, Plaintiff has failed entirely to take into account the limited nature of his success. Plaintiff seeks fees for work expended as to the dismissed

defendants, as to the defendants with whom he settled, as to the defendant the jury found not liable, and as to all claims, including those the jury explicitly rejected. This case started with an 11-count Complaint seeking hundreds of thousands of dollars in damages against five defendants and ended with a jury verdict in favor of Plaintiff on one claim against one defendant awarding no compensatory damages and only $4,000 in punitive damages. Considering that, the undersigned finds that a significant reduction in the lodestar is appropriate. In particular, the undersigned has considered the lack of any compensatory damages award, the limited punitive damages award, and the fact that Plaintiff secured a jury verdict against only one defendant on one claim within the Complaint.

Finally, the undersigned has considered any public benefit to this case in determining whether the recommended reduction is appropriate. Here, it appears that the primary and central purpose of this action was to obtain monetary damages, but Plaintiff received no compensatory damages at all and only $4,000 in punitive damages. And while there is arguably a deterrent effect to such a punitive damages award against a law enforcement officer in relation to Plaintiff's success on his malicious prosecution count, this is not a case in which Plaintiff obtained a larger success for the public, injunctive relief, or otherwise secured an excellent result despite the limited monetary award.

### c. Costs

In the Motion and the Bill of Costs, Plaintiff seeks to recover costs in the amount of $2,388.79. Doc. 117 at 11-12.

Federal Rule of Civil Procedure 54(d)(1) allows for an award of costs for a prevailing party unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. *See Durden v. Citicorp Trust Bank, FSB*, Case No. 3:07-cv-974-J-34JRK, 2010 WL 2105921, at

*1 (M.D. Fla. Apr. 26, 2010) (stating that Rule 54 establishes a presumption that costs should be awarded unless the district court decides otherwise) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1038 (11th Cir. 2000)). Generally, a district court may not award costs under Rule 54 "in excess of those permitted by Congress under 28 U.S.C. § 1920." *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)). Here, 28 U.S.C. § 1988 also allows the recovery of reasonable costs. The party seeking costs must provide sufficient detail and documentation regarding the requested costs so that the opposing party may challenge the costs and so the court may conduct a meaningful review of the costs. *Lee v. Am. Eagle Airlines, Inc.*, 93 F. Supp. 2d 1322, 1335-36 (S.D. Fla. 2000). Failure to provide sufficient detail or supporting documentation verifying the costs incurred and the services rendered can be grounds for denial of costs. *Pelc v. Nowak*, Case No. 8:11-cv-79-T-17TGW, 2013 WL 3771233, at *5 (M.D. Fla. July 17, 2013) (citing *Johnson v. Mortham*, 173 F.R.D. 313, 318 (N.D. Fla. 1997)).

Plaintiff provided little argument or information concerning the requested costs, relying simply on the invoices attached to the Bill of Costs. *Id*. at 11-12. In response to the Bill of Costs, Deputy Mallard objected to $896.59 of costs contained within two categories: the cost of mediation ($460.84) and Plaintiff's counsel's travel expenses for an out-of-state deposition ($435.75). Neither of the costs objected-to are costs recoverable under 28 U.S.C. § 1920. And to the extent Plaintiff argues § 1988 allows the recovery of costs in excess of those recoverable pursuant to § 1920, Plaintiff has failed to explain, cite to authority, or otherwise justify why those costs (particularly those challenged by Deputy Mallard) are reasonable and should be recovered in this case. Thus, Plaintiff has failed to carry his burden to justify the recovery of the mediation fee and

travel expenses.  As such, the undersigned respectfully recommends that the objection to the Bill of Costs be sustained, and that costs be taxed against Deputy Mallard in the amount of $1,492.20.

### III.   Conclusion

Accordingly, upon due consideration, the undersigned respectfully **RECOMMENDS** that the Motion (Doc. 117) be **GRANTED in part** such that Plaintiff be awarded $67,077.00 in attorney fees and $1,492.20 in costs and be **DENIED** in all other respects.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on November 13, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy